## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

IN RE: M/V RAM XVII

CIVIL ACTION NO. 6:22-cv-0998

JUDGE S. MAURICE HICKS, JR.

MAGISTRATE JUDGE AYO

### MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment filed by Plaintiff Aries Marine Corporation ("Aries Marine"). See Record Document 55. Specifically, Aries Marine seeks summary judgment on its claim for contractual defense and indemnity and breach of contract against Defendant Tolunay-Wong Engineers, Inc. ("TWE"). See Record Document 55 at 1. To date, this Motion is unopposed. For the reasons set forth below, Aries Marine's Motion is **GRANTED**.

### BACKGROUND

Aries Marine was responsible for the management, manning, victualing, and operation of the M/V Ram XVII. See Record Document 1 at 2. On December 20, 2019, the M/V Ram XVII was situated in the self-elevated position on the outer-continental shelf in the Gulf of Mexico off the coast of Texas. See id. at 3. Lloyd Engineering, Inc. ("LEI") and TWE personnel supervised the Amdrill, Inc. ("Amdrill") personnel who operated portable soil boring and sampling equipment situated on the M/V Ram XVII deck to perform geotechnical test boring into the subsea floor. See id.

That day, Dylan Rose ("Rose"), an Amdrill employee, was injured while participating in boring and test sampling operations when he was struck in the leg by part of the boring equipment. See id. Rose filed an action in the Fifteenth Judicial District Court, Lafayette Parish against defendants Amdrill, Aries Marine, and TWE seeking damages he allegedly sustained in the incident on the M/V Ram XVII. See id. at 4. Aries Marine has denied responsibility for the events or damages alleged by Rose. See id. at 5. However, Aries Marines argues that if it is held liable to Rose or any other party, Aries Marine is entitled to indemnity from LEI and TWE for any loss Aries Marine may sustain in this matter, including all costs, attorney fees, and/or judgment which might be rendered against it, for the reason that LEI and TWE expressly agreed to defend and indemnity Aries Marine in two different contracts. See id. The contract between TWE and Aries Marine is relevant for the instant motion.

On December 2, 2019, TWE and Aries Marine entered into an Indemnity and Hold Harmless Agreement (Boarding Agreement) (the "Boarding Agreement") in which TWE agreed, in part, to defend, indemnity, and hold Aries Marine harmless from and against all claims such as those asserted by Rose and to carry insurance to support its indemnity obligations. See id. at 5 – 6. These policies were to name Aries Marine as an additional assured and waive subrogation in favor of Aries Marine. See id. Aries Marine claims it made timely demand for defense and indemnity, which TWE has refused to provide. See id. at 6. Aries Marine seeks summary judgment against TWE on its claims for defense and indemnity and breach of contract for failure to procure proper insurance for claims asserted by Rose based on TWE's obligations in the Boarding Agreement. See Record Document 55 at 4.

2

## LAW AND ANALYSIS

### I. Summary Judgment Standard.

The Fifth Circuit provides, "A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221 F. 3d 701, 737 (5th Cir. 2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F. 2d 1408, 1415 (5th Cir. 1993).

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2552–53. (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart La., L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trail that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id.

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 323, 106 S. Ct. 2553). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). There is no genuine issue for trial—and thus, a grant of summary judgment is warranted—when the record as a whole "could not lead a rational trier of fact to find for the moving party…." Id.

## II. Maritime Contract Law.

The Fifth Circuit has established "a simpler, more straightforward test consistent with the Supreme Court's decision in Norfolk Southern Railway Co. v. Kirby" for deciding what constitutes a maritime contract. In re Larry Doiron, Inc., 879 F. 3d, 568, 569 (5th Cir. 2018). Importantly, the Court realized if "the contract is maritime and state law does not apply, then the indemnity obligation is enforceable." Id. at 571. The Court adopted a "two-pronged test to determine whether a contract in this context is maritime." Id. at 575–76. The analysis under the two-pronged test is as follows:

> First, is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters? The answer to this inquiry will avoid the unnecessary question from Davis & Sons as to whether the particular service is inherently maritime. Second, if the answer to the above question is "yes," does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract? If so, the contract is maritime in nature.

Id. at 576.

4

The test focuses "on the contract and the expectations of the parties." Id. The Fifth Circuit found that in a contracts case, this test is the right approach and "assists the parties in evaluating their risks, particularly their liability under indemnification clauses in the contract." Id. If the scope of the contract is unclear, "courts may permit the parties to produce evidence of the work actually performed and the extent of vessel involvement in the job." Id. at 577. The Fifth Circuit and several district courts have examined and applied this test. See Earnest v. Palfinger Marine USA, Inc., 90 F. 4th 804 (5th Cir. 2024); Matter of Aries Marine Corp., No. 19-10850 c/w 19-13138, 2024 WL 4651335 (E.D. La. Nov. 1, 2024); Cantium, LLC v. FDF Energy Servs., LLC, No. 23-78, 2024 WL 3551126 (E.D. La. June 7, 2024); and Sequera v. Danos LLC, 724 F. Supp. 3d 673 (S.D. Tex. 2024).

**III. Analysis.**

Aries Marine submits it is entitled to summary judgment against TWE on the ground that TWE is contractually obligated to cover, defend, indemnify, and name Aries Marine as an additional assured on TWE's insurance policies for all claims asserted against it and the M/V Ram XVII by Rose in this limitation of liability action. See Record Document 55 at 2. Aries Marine first contends the Boarding Agreement is a legally enforceable maritime contract. See id. at 5. This Agreement provided TWE with an enforceable right for it and its subcontractor's personnel to board the Aries Marine vessel. See id. at 7. Thus, Aries Marine contends there is sufficient consideration such that the Boarding Agreement creates an enforceable contract. See id. Additionally, Aries Marine asserts the Boarding Agreement meets the clear and unequivocal test because the indemnity language specifies that indemnity will include Aries Marine's own negligence and vessel unseaworthiness. See id. at 8.

5

Second, Aries Marine argues it is entitled to defense and reimbursement of defense costs to date. See id. The Boarding Agreement explicitly states the duty to defend, requiring TWE to defend Aries Marine for the same claims and causes of action for which TWE owes Aries Marine indemnity. See id. Thus, Aries Marine contends that under the clear terms of the Boarding Agreement, it is entitled to reimbursement of defense costs incurred in defense of the claims asserted against it by Rose in addition to defense costs through the resolution of the claims against Aries Marine. See id. at 9.

Third, Aries Marine asserts TWE is liable to it for breach of contract. See id. The Boarding Agreement requires TWE to procure and maintain liability insurance to support its indemnity obligations and to name Aries Marine as an additional assured on all such liability policies. See id. Aries Marine argues TWE has breached those obligations; therefore, TWE is liable to Aries Marine as the insurer and must reimburse defense costs expended and provide defense and indemnity to Aries Marine for all claims asserted by Rose. See id. Ultimately, Aries Marine submits there are no genuine issues of material fact that: (1) TWE is contractually obligated to provide Aries Marine defense and indemnity and (2) TWE breached its obligations to Aries Marine to procure and maintain insurance coverage to support its defense and indemnity obligations. See id. at 10.

To determine whether the Boarding Agreement should be classified as a maritime contract, the Court will apply the two-pronged test adopted in Doiron. 879 F. 3d at 575–76. The Boarding Agreement was a contract in which Aries Marine owned various self-elevating vessels and offshore supply vessels designed to be used in support of various maritime related activities associated with energy development, security, and infrastructure. See Exhibit 3, p. 1. TWE desired to operate on and/or utilize Aries Marine's

vessels to furnish services, labor, materials, and equipment to its own clients and customers or Aries Marine's customers for the purpose of energy development, security, or infrastructure. See id. Aries Marine and TWE desired to allocate the risks and liability arising out of TWE riding, using, and/or working on, from, or in conjunction with Aries Marine's vessels. See id. In Kirby, the Supreme Court held that "so long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce—and thus it is a maritime contract." 543 U.S. 14, 27, 125 S. Ct. 385, 395 (2004). See Doiron, 879 F. 3d at 576. Prong one is satisfied in the instant case. The Boarding Agreement is a contract to provide services to facilitate various maritime related activities associate with energy development, security, and infrastructure. TWE and Aries Marine customers are being served and provided for by using Aries Marine's vessels. Amdrill employees, like Rose, were aboard the M/V Ram XVII conducting drilling operations at the time of the incident. Aries Marine's vessels were being used for maritime purposes; therefore, the purpose of the Boarding Agreement is to effectuate maritime commerce.

Since prong one is satisfied, the Court will analyze prong two. Aries Marine and TWE expect the vessels will play a substantial role in the completion of the Boarding Agreement because it mentions several times that Aries Marine vessels will be utilized by TWE in support of various maritime activities. By focusing on the language and the intentions of the parties, the importance of Aries Marine's vessels is evident. Section 8.0 of the Boarding Agreement includes a governing law provision: "The Parties intend for the focus of this contract to be maritime and to be performed in maritime locations and on vessels. The Parties expressly state that this Agreement is made and shall be construed

in accordance with the General Maritime Laws of the United States of America." <u>See</u> Exhibit 3, pg. 3. From the plain language of the Boarding Agreement, the parties' intentions are clear: the Boarding Agreement is a binding maritime contract governed by federal law. The Court finds the Boarding Agreement is maritime in nature, satisfying prong two.

Since the Boarding Agreement is a valid maritime contract, the indemnity provisions are enforceable. There are several relevant provisions of the Boarding Agreement. Section 3.2 provides that TWE "agrees to indemnify, defend, and hold Aries Marine harmless from and against all claims, demands, causes of action, and judgment of every kind and character, and expenses…." <u>See</u> Exhibit 3, at 2. Section 2.3 defines "defend" as "the obligation of the indemnitor to provide such defense at its sole expense, and/or reimburse, or pay on behalf of, the indemnitor for the indemnitee's reasonable expenses including, without limitation, attorneys' fees incurred in defending itself. The indemnitee shall have sole discretion in choosing which of these obligations to defend that it will require the indemnitor to provide." <u>See id.</u> Section 6.0 provides that the Boarding Agreement "shall inure to the benefit of and be binding upon [Aires Marine and TWE], their respective heirs, administrators, executors, successors, and assigns." <u>See id.</u> at 3. Section 4.1 provides that TWE, "at its own costs and expenses, agrees to procure and maintain with reliable insurance companies coverage as specified in Exhibit 'A' of the Boarding Agreement to support the indemnities given above." <u>See id.</u> Aries Martine and TWE both signed the Boarding Agreement agreeing to all provisions contained within. <u>See id.</u> at 4.

TWE's insurer, Axis Insurance, denied coverage to Aries Marine in response to Aries Marine's demand for defense and indemnity. See Exhibit 1. TWE breached its obligations under the Boarding Agreement, a valid and enforceable maritime contract. Therefore, TWE is responsible to reimburse Aries Marine for the reasonable expenses, including attorneys' fees. See Exhibit 3, pg. 2.

After reviewing Aries Marine's Motion and the summary judgment record, the Court finds there are no genuine issues of material fact that: (1) TWE is contractually obligated to provide Aries Marine defense and indemnity and (2) TWE breached its obligations to Aries Marine to procure and maintain insurance coverage to support its defense and indemnity obligations. Neither the summary judgment record nor TWE provide evidence to the contrary. Therefore, Aries Marine's Motion for Partial Summary Judgment (Record Document 55) is hereby **GRANTED**.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Aries Marine's Motion for Partial Summary Judgment (Record Document 55) is **GRANTED**. Therefore, TWE is liable to Aries Marine for defense and indemnity for the claims asserted by Rose. Furthermore, TWE must reimburse Aries Marine for reasonable costs and attorneys' fees expended in its defense.

An accompanying order consistent with this ruling will be issued herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 6th day of December, 2024.

_____
UNITED STATES DISTRICT COURT JUDGE

10