**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

IN RE: M/V RAM XVII

CIVIL ACTION NO. 6:22-cv-0998

JUDGE S. MAURICE HICKS, JR.

MAGISTRATE JUDGE AYO

**MEMORANDUM RULING**

Before the Court are three Motions for Summary Judgment. Amdrill Inc. ("Amdrill") filed a Motion for Summary Judgment. See Record Document 78. Lloyd Engineering Inc. ("LEI") and Tolunay-Wong Engineers Inc. ("TWE") each filed an opposition. See Record Documents 96 & 100. Amdrill replied. See Record Document 103. Westfield Insurance Company ("Westfield") filed a Motion for Summary Judgment. See Record Document 80. LEI and TWI each filed an opposition. See Record Document 97. Westfield replied. See Record Document 105. TWE filed a Motion for Summary Judgment. See Record Document 82. Westfield and Amdrill each filed an opposition. See Record Documents 94 & 98. Rose filed a response. See Record Document 99. TWE did not file a reply. For the reasons set forth below, Amdrill and Westfield's Motions for Summary Judgment (Record Documents 78 & 80) are **GRANTED**. TWE's Motion for Summary Judgment (Record Document 82) is **DENIED**. All claims asserted by TWE, LEI, and Aries Marine Corp. ("Aries Marine") against Amdrill and Westfield are **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

In November of 2019, LEI contracted with TWE to conduct geotechnical studies of soil core samples in the Gulf of Mexico off the coast of Texas ("the LEI/TWE Contract"). See Record Document 55 at 2. In December of 2019, TWE subcontracted with Amdrill to provide the crew and equipment to drill for and obtain the soil core samples to be studied for the LEI/TWE Contract ("the TWE/Amdrill Contract"). See id. In December of 2019, LEI entered into a time charter agreement with Aries Marine to charter a liftboat, the M/V Ram XVII, to provide transportation, a work platform, and living quarters for LEI, TWE, and Amdrill personnel in support of the LEI/TWE and TWE/Amdrill Contracts ("the Charter Agreement"). See id.

On December 2, 2019, Aries Marine and TWE entered into a contract titled "Indemnity and Hold Harmless Agreement (Boarding Agreement) ("the Boarding Agreement"), in which Aries Marine, as owner of the various vessels, and TWE agree to allocate risks and liabilities arising out of TWE's use of Aries Marine's vessels. See id. at 3. Aries Marine required that TWE executed the Boarding Agreement before TWE and its subcontractor's personnel would be permitted to board the M/V Ram XVII to perform the core sample work. See id. The Boarding Agreement bears the signatures of TWE's Executive Vice President, Arthur J. Stephens, P.E. ("Stephens") and Aries Marine's President and CEO, Courtney B. Ramsay. See id.

At the time of his December 2019 accident, Rose was employed by TWE's subcontractor, Amdrill. See id. at 4. Rose asserted claims against Aries Marine arising out of injuries sustained while working as a driller helper for Amdrill on the deck of the

M/V Ram XVII in performance of the TWE/Amdrill Contract. See id. Rose initially sued Aries Marine and TWE in state court seeking recovery for personal injury damages. See Record Document 78-1 at 1–2. He also named Amdrill as a defendant in that litigation; however, Amdrill and the claims against it were later dismissed, as Rose settled all claims against Amdrill. See id. at 3.

Subsequently, Aries Marine filed a limitation of liability action, alleging that TWE and LEI are liable to it for contractual defense and indemnity and breach of contract. See id. Rose filed an Answer in the limitation action and asserted claims under the general maritime law for negligence against Aries Marine, a crossclaim against TWE, and a third-party claim against LEI, all arising from the injuries suffered aboard the M/V Ram XVII in December 2019. See id. Later, Aries Marine, TWE, and LEI filed an Amended Third-Party Complaint (Record Document 62) suing Amdrill and its insurer, Westfield, for both contractual and tort defense and indemnity. See id.

## LAW AND ANALYSIS

### I. Summary Judgment Standard.

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2552–53. (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart La., L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trail that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id.

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 323, 106 S. Ct. 2553). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). There is no genuine issue for trial—and thus, a grant of summary judgment is warranted—when the record as a whole "could not lead a rational trier of fact to find for the moving party…." Id.

**II. Maritime Contract Interpretation.**

There are several determinations a court should make before interpreting a maritime contract. A court should decide whether the contract in question is a maritime contract. McKinney Salvage LLC v. Sw. Materials Inc., No. 23-00626, 2024 WL 1664751, at *2 (W.D. La. Apr. 17, 2024). This determination "is dependent upon 'the nature and character of the contract' and whether the contract references 'maritime service[s] or maritime transactions.'" Id. (quoting Earnest v. Palfinger Marine USA, Inc., 90 F. 4th 804, 810 (5th Cir. 2024) (quoting N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U.S. 119, 125 (1919))).

Additionally, a court should determine whether a maritime contract was formed. Id. "The elements of contract formation under general maritime law require the establishment of (1) an offer, (2) acceptance, and (3) consideration." Id. The Second Restatement provides some important definitions for elements of contract formation. A counteroffer is defined as:

> (1) A counter-offer is an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer. (2) An offeree's power of acceptance is terminated by his making of a counter-offer, unless the offeror has manifested a contrary intention or unless the counter-offer manifests a contrary intention to the offeree.

Restatement (Second) of Contracts § 39. Acceptance is defined as:

> (1) Acceptance of an offer is a manifestation of assent to the terms thereof made by the offer in a manner invited or required by the offer. (2) Acceptance by performance requires that at least part of what the offer requires to be performed or tendered and includes acceptance by a performance which operates as a return promise. (3) Acceptance by a promise requires that the offeree complete every act essential to the making of the promise.

Id. at § 50. To establish breach of a maritime contract, a plaintiff is required to show "'(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages.'" Id. at *4 (internal quotations omitted) (quoting In re Chester J. Marine, LLC, 636 B.R. 704, 715 (Bankr. E.D. La. 2021) (quoting W. Towboat Co. v. Vigor Marine, LLC, 544 F. Supp. 3d 1100, 1116 (W.D. Wash. 2021))).

The Fifth Circuit provides, "When interpreting a maritime contract, general principles of contract law apply from federal admiralty law, rather than from state law."

Int'l Marine, L.L.C. v. FDT, L.L.C., 619 Fed. Appx. 342, 349 (5th Cir. 2015). See Har-Win, Inc. v. Consol. Grain & Barge Co., 794 F. 3d 985, 986–87 (5th Cir. 1986). "Federal maritime law 'stems from the maritime jurisprudence of the federal courts, and is an amalgam traditional common law rules, modifications of those rules, and newly created rules drawn from state and federal sources.'" Id. (quoting One Beacon Ins. Co. v. Crowley Marine Servs., Inc., 648 F. 3d 258, 262 (5th Cir. 2011) (citations and internal quotation marks omitted)). When a court applies federal law to a contract, it should look to ""principles of general contract law."'" Id. (quoting Univ. of Tex. Sys. v. U.S., 759 F. 3d 437, 443 (5th Cir. 2014) (quoting Franconia Assocs. v. U.S., 536 U.S. 219, 141–42, 122 S. Ct. 1993 (2002))). However, "'a court may not look beyond the written language of [a contract] to determine the intent of the parties unless the disputed contract provision is ambiguous.'" Id. (quoting Corbitt v. Diamond M. Drilling Co., 654 F. 2d 329, 332–33 (5th Cir. Unit A 1981)). When a court determines the validity of the contract's terms, its focus should be on "'whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms.'" Matter of Adriatic Marine, LLC, No. 20-1488, 2021 WL 5833968, at *2 (E.D. La. Dec. 9, 2021) (quoting One Beacon Ins. Co., 648 F. 3d at 269).

"'[T]he interpretation of an insurance policy is a question of law….'" Holden v. U.S. United Ocean Servs., L.L.C., 582 Fed. Appx. 271, 273 (5th Cir. 2014) (quoting First Am. Bank v. First Am. Transp. Title Ins. Co., 585 F. 3d 833, 837 (5th Cir. 2009) (citing Robinson v. Orient Marine Co., Ltd., 505 F. 3d 364, 366 (5th Cir. 2007))). "'The interpretation of an indemnity provision in a maritime contract is ordinarily governed by federal maritime law rather than by state law.'" Paragon Asset Co. Ltd. v. Gulf Cooper &

Mfg. Corp., 622 F. Supp. 3d 360, 422 (S.D. Tex. 2022) (quoting Corbitt, 654 F. 2d at 332). "In the absence of a choice of law by the parties, the construction of indemnity provisions in maritime contracts is governed by maritime law." Angelina Cas. Co. v. Exxon Corp., U.S.A., Inc., 876 F. 2d 40, 42 (5th Cir. 1989).

When a maritime contract contains an indemnity agreement, the contract "'should be read as a whole and its words given their plain meaning unless the provision is ambiguous.'" Kelly v. Rodi Marine, L.L.C., No. 22-30043, 2023 WL 3340075, at *2 (5th Cir. May 10, 2023) (quoting Breaux v. Halliburton Energy Servs., 562 F. 3d 358, 364 (5th Cir. 2009) (citation omitted) (quoting Weathersby v. Conoco Oil Co., 752 F. 2d 953, 955 (5th Cir. 1984) (per curiam))). Disagreement as to the meaning of a contract or uncertainty or lack of clarity in the language chosen does not make a contract ambiguous if "'it can be given a certain definite legal meaning or interpretation….'" Id. A court should construe an indemnity provision "to cover 'all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties.'" Paragon, 622 F. Supp. 3d at 422 (quoting Corbitt, 654 F. 2d at 333).

**III. Overview of the Three Motions for Summary Judgment.**

All three motions address the issue of whether TWE, LEI, and Aries Marine were named as additional insureds on the policies issued by Westfield to Amdrill (Record Documents 78, 80, & 82).

(A) Amdrill's Motion for Summary Judgment (Record Document 78)

Amdrill moves for summary judgment on the claim for contractual defense and indemnity made by TWE, LEI, and Aries Marine. See Record Document 78 at 1. Amdrill

7

argues there are no genuine issues of material fact to dispute that Amdrill never agreed to name these entities as additional insureds and is not contractually obligated to defend, indemnify, and hold harmless any of them. See id. First, the claim for tort contribution and/or indemnity under Federal Rule Civil Procedure 14(c) against Amdrill is not permitted as a matter of law because Amdrill and Rose have already entered into a settlement agreement, and all claims against Amdrill have been resolved. See Record Document 78-1 at 6. Second, there is no agreement for defense and indemnity in the Amdrill contract, so Amdrill requests that the claim for contractual defense and indemnity be dismissed completely. See id. at 7. Third, TWE's proposal including the insurance requirements and unsigned Boarding Agreement are not a written contract between Amdrill and TWE or any other entity. See id.

LEI opposes Amdrill's motion, asserting that Amdrill was contractually required to provide insurance. See Record Document 96 at 3. TWE issued a proposal to Amdrill that required Amdrill to ensure its work on the project and name TWE and LEI as additional insureds. See id. Amdrill accepted this proposal by issuing a quote to TWE. See id. LEI submits that Amdrill's actions in agreeing to provide coverage for TWE and LEI, issuing a certificate of insurance claiming LEI was covered, and failing to obtain such coverage is a breach of its contractual obligations to both TWE and LEI. See id. at 5. LEI submits there are numerous fact issues precluding summary judgment as to the contract claims. See id. Additionally, LEI addresses the effect of the settlement between Rose and Amdrill. See id. at 6. LEI asserts Amdrill has failed to prove by its evidence that it is not subject to Jones Act liability above and beyond what it has paid under the Longshore and Harbor

Workers' Compensation Act ("LHWCA") or that it could not be sued by Rose. See id. at 6–7.

TWE files an opposition but also adopts LEI's opposition as its own. See Record Document 100 at 1. TWE argues its email transmission to Amdrill included not only its two-page proposal, but also made reference to specific documents concerning insurance requirements that TWE requested be reflected on Amdrill's insurance naming TWE and LEI. See id. at 6. Ultimately, TWE submits that the written communications, written documents, and written terms referenced all serve to create an agreement between TWE and Amdrill for offshore drilling services while protecting TWE, LEI, and Aries Marine from the risks inherent in Amdrill's work as additional insureds on Amdrill's policies of insurance. See id. at 7.

Amdrill replied, restating it owes no duties to TWE, LEI, or Aries Marine for defense, indemnity, or insurance coverage for the claims asserted in this litigation. See Record Document 103 at 1. Amdrill asserts TWE's argument is premised on the legally incorrect assumption that silence as to a proposal constitutes agreement with such proposal. See id. at 2. Thus, there is no such clear assent by Amdrill to all terms which TWE included in its proposal. See id. Amdrill reiterates there is no Rule 14(c) contribution or indemnity available to TWE, LEI, or Aries Marine. See id. at 6. Additionally, Amdrill contends TWE, LEI, and Aries Marine cannot be held financially responsible for any liability that Amdrill could be assessed for Rose's injury at trial because of the settlement. See id. at 7.

(B) Westfield's Motion for Summary Judgment (Record Document 80)

Westfield moves for summary judgment on all claims brought against it by TWE, LEI, and Aries Marine. See Record Document 80-1 at 1. First, the Amended Joint Third-Party Complaint is untimely. See id. at 4. Third-Party Plaintiffs were late in bringing their claims and knew Rose had settled with Amdrill so there was no way they could be found liable for any damages caused by Amdrill. See id. at 5. Additionally, Westfield submits the present claims are prejudicial. See id. If Westfield's motion is not granted, it argues it will be forced to move to upset the current schedule and continue the trial set to begin on February 24, 2025. See id.

Second, TWE, LEI, and Aries Marine are not additional insureds under the Westfield policy. See id. The documents relied upon by TWE, LEI, and Aries Marine neither satisfy the policy's writing requirement nor determine the scope of any coverage afforded to additional insureds by the policy. See id. Moreover, Westfield contends Amdrill does not agree in writing through a contract or an agreement to name TWE, LEI, or Aries Marine as additional insureds. See id. at 6.

Third, the certificates of liability insurance do not modify the policy. See id. at 8. These documents are merely certificates, not contractual documents that form a part of the Westfield insurance policy. See id. Fourth, LEI and Aries Marine fail to meet the definition of an additional insured under the Westfield policy because Amdrill was not working for them. See id. The purported "contract" offered is solely between Amdrill and TWE. See id. at 9. Finally, Westfield asserts that any additional insureds coverage available to additional insureds under the policy only extends to liability for damage caused by Amdrill's acts or omissions. See id. There is no coverage for TWE, LEI, or Aries Marine because they legally can have no liability for Amdrill's actions. See id.

Westfield submits that the only coverage provided to additional insureds was extinguished by the settlement. See id.

LEI files an opposition to Westfield's motion. See Record Document 97. LEI argues the evidence of the writings between Amdrill and TWE not only invalidates Westfield's claim but almost conclusively establishes that LEI was agreed to be an additional insured and therefore within the definition under the policy. See id. at 7. Additionally, Westfield has failed to establish as a matter of law that Amdrill's settlement forecloses suit against it by an additional insured or that the timing of the third-party petition provides support for summary judgment. See id.

TWE also files an opposition, which adopts and incorporates its memorandum in opposition to Amdrill's Motion for Summary Judgment. See Record Document 101. TWE contends Amdrill agreed to its written proposal to name TWE, LEI, and Aries Marine as additional insureds on the policy. See id. at 7. TWE asserts that Westfield cannot retroactively argue that a formal, written contract is required to create an additional insured obligation. See id. Westfield could have added language to its endorsement or opted to utilize an additional insured endorsement that requires the additional insured to be specifically identified and listed on its schedule as other insurers. See id. Additionally, TWE argues it cannot be disputed that based upon the pleadings in the record, Rose has alleged that TWE, LEI, and Aries Marine are liable for his bodily injury damages arising from Amdrill's acts or omissions. See id.

Westfield replied, reiterating that Amdrill did not agree in writing to make anyone an additional insured under the policy. See Record Document 105 at 8. TWE's proposal

11

is an unaccepted offer that is legally null. See id. The certificates of insurance contain

contractual disclaimer language and do not constitute an agreement in writing by Amdrill

to make TWE, LEI, and Aries Marine additional insureds. See id. Westfield heavily

references Westfield Ins. Co. v. FCL Builders, Inc., 407 Ill. App. 3d 730, 948 N.E. 2d 115

(Ill. App. Ct. 2011), in support of its Motion. See id. at 3–7. Additionally, Westfield argues

that Rose clearly states he is not pursuing TWE, LEI, or Aries Marine for damage caused

by Amdrill's acts. See id. Thus, Westfield submits no coverage is afforded under its policy.

See id.

### (C) TWE's Motion for Summary Judgment (Record Document 82)

TWE moves for summary judgment on the issue of whether Amdrill caused TWE

to be named as an additional insured on its policy of insurance issued by Westfield. See

Record Document 82 at 1. TWE contends the Westfield additional insured endorsement

does not require a formalized writing; rather, it requires there be a written contract or

agreement between Amdrill and TWE, evidencing an agreement that TWE be named as

an additional insured on the policy. See Record Document 82-1 at 9. Thus, TWE and

Amdrill obligated each other by way of written requests for proposal, quotes, acceptances,

and the written email and attachments. See id. at 9–10. TWE states that the Court should

apply the "eight corners rule" from Martco Ltd. P'ship v. Wellons, Inc., 588 F. 3d 864, 872

(5th Cir. 2009), to decide if Westfield owes TWE a defense. See id. at 8. Ultimately, TWE

submits it has met its burden and has demonstrated that based on the pleadings on file,

the communications and writing existing between it and Amdrill, and Westfield's additional

insured endorsement's language, there is no genuine issue of material fact. See id. at 10.

Westfield opposes TWE's Motion for several reasons. See Record Document 94. First, TWE is not an additional insured under Westfield's policy. See id. at 1. Second, even if TWE is an additional insured, no coverage is afforded because any claim for damage caused by Amdrill was extinguished before TWE tendered its defense to Westfield. See id. Third, TWE's Amended Joint Third-Party Complaint is untimely and prejudicial to Westfield. See id. Thus, Westfield submits TWE's Motion should be denied. See id. at 9.

Amdrill also files an opposition. See Record Document 98. Amdrill asserts it did not accept TWE's proposal or sign the agreements contained within the proposal. See id. at 2. Instead, Amdrill submitted its own offer, which consists of quotes for the various parts of the project it would perform, the items to which it agreed to provide, and the applicable law governing the contract. See id. TWE accepted Amdrill's proposed offer. See id. However, Amdrill contends it never agreed to name TWE as an additional insured on any of its insurance policies. See id. at 3. Additionally, Rose's settlement with Amdrill extinguished any coverage obligations which Amdrill or Westfield may have had to TWE, LEI, or Aries Marine. See id. at 5. Amdrill submits TWE's Motion should be denied. See id. at 6.

Rose files a response to TWE's Motion. See Record Document 99. Rose states that during the pendency of this limitation proceeding, he has never alleged that TWE, LEI, or Aries Marine are in any way liable for any damages owed to him as a result of any fault which can be solely attributed to Amdrill. See id. at 2. Additionally, there is no attempt to have Amdrill's alleged actions or inactions attributed to TWE, LEI, or Aries Marine. See id. Rose asserts that if any fault is assessed to Amdrill at trial, he does not and will not

13

seek to recover damages from TWE, LEI, or Aries Marine for any such portion of damages

for which Amdrill is deemed responsible. See id.

**IV. Analysis.**

    (A) Timeliness of Amended Third-Party Complaint

    Westfield argues the Amended Third-Party Complaint (Record Document 62) is

untimely and prejudicial. See Record Documents 80-1 at 4 & 94 at 1. The Court disagrees.

On September 19, 2024, Magistrate Judge Hornsby granted TWE, LEI, and Aries

Marine's Motion for Leave to File the Amended Joint Third-Party Complaint. See Record

Document 61. Third-Party Defendants did not express any opposition to the proposed

pleading. See id. As a result, TWE, LEI, and Aries Marine filed an Amended Third-Party

Complaint on September 19, 2024 after the Motion for Leave was granted. See Record

Document 62. Therefore, the Court finds the Amended Third-Party Complaint is timely

and not prejudicial.

    (B) Whether TWE, LEI, and Aries Marine are Additional Insureds

    First, the Court should determine whether the contract between Amdrill and TWE

is a maritime contract. Amdrill, Westfield, and TWE dispute what documents make up the

contract. Amdrill and Westfield argue Amdrill's quote constitutes a counteroffer to TWE's

proposal, and TWE emailed its written acceptance to Amdrill's counteroffer. See Record

Document 78-1 at 4; see also Record Document 80-1 at 7. Thus, Amdrill and Westfield

contend TWE's proposal, the certificates of insurance, and Aries Marine's Indemnity and

Hold Harmless Agreement are not a part of the contract. See id. TWE asserts its proposal,

which includes the Indemnity and Hold Harmless Agreement from Aries Marine, is an offer, which Amdrill accepted with its quote. See Record Document 82-1 at 9–10. Thus, TWE argues the certificates of insurance are also included in the contract. See id.

The Court finds that the contract in question between Amdrill and TWE is a maritime contract governed by federal law and general contract principles. Regardless of what documents make up the contract, it is a maritime contract because of the services and transactions involved. The underlying services are for drilling and sampling operations on a vessel. See Record Document 82-4, Exhibits 1 & 5; see also id. at 44. Since the contract is a maritime contract and the parties have not stipulated to which law governs, federal law and the general principles of contract law will apply. See McKinney, 2024 WL 1664751, at *2; Int'l Marine, 619 Fed. Appx. at 349; Har-Win, 794 F. 3d at 986–87 (5th Cir. 1986).

Now, the Court must decide whether Amdrill's quote constitutes an acceptance of TWE's proposal, which is a question of law. A valid contract requires offer and acceptance. Cypert v. Broussard Bros., Inc., No. 13-5049, 2014 WL 4825290, at *4 (E.D. La. Sept. 26, 2014). The Court will apply the general rules of contract law and federal common law to this maritime contract. Id. Based on the summary judgment record, Amdrill's quote does not constitute an acceptance of TWE's offer. Westfield's insurance policy expressly states: "All persons or organizations when you have agreed in writing in a contract or agreement that such persons or organizations be added as an additional insured." See Record Document 82-4 at 26. There is no written contract or agreement naming TWE, LEI, and Aries Marine as additional insureds.

15

TWE's proposal requests Amdrill to "review the attachment and provide signatures or provide any questions or comments." See Record Document 82-4 at 7, Exhibit 1. Amdrill's quote makes no mention of the insurance certificates or the Aries Marine Indemnity and Hold Harmless Agreement. Amdrill did not sign off on the Indemnity and Hold Harmless Agreement, nor did it sign off on TWE, LEI, and Aries Marine being named additional insureds. The certificates of liability insurance issued by LRA Insurance do not bind Amdrill to name TWE, LEI, and Aries Marine as additional insureds. At the top, the certificates expressly state:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

See Record Document 82-4 at 41, 47, & 48. These certificates are not binding on Amdrill, nor do they alter Westfield's insurance policy to include TWE, LEI, and Aries Marine as additional insureds.

Amdrill's quote is silent as to insurance and indemnity; it only responds with the pricing and fees for the project. See Record Document 82-4 at 67, Exhibit 5. Like the district court found in Redmond v. Polunsky, there is no agreement to TWE's proposal because Amdrill "never consented to the terms of the so-called contract. It is a fundamental principle of contract law that silence does not constitute acceptance of a contract." No. 20-00204, 2023 WL 2143600, at *6 (E.D. Tex. Feb. 21, 2023). Since

16

Amdrill's quote is silent as to several items mentioned in TWE's proposal, such as insurance and indemnity, it is not an acceptance. Even though Stephens, TWE's Executive President, believes the quote is an acceptance, his unsworn declaration alone does not overcome summary judgment. See Record Document 82-4 at 1–6. At this stage of the proceeding, the Court only analyzes the summary judgment record. The evidence supports a finding that there are no genuine issues of material fact to dispute that: (1) Amdrill did not name TWE, LEI, and Aries Marine as additional insureds and (2) Amdrill is not contractually obligated to defend, indemnify, and hold harmless TWE, LEI, and Aries Marine. There is no other summary judgment evidence, such as an affidavit or deposition testimony, to find summary judgment in favor of TWE. Therefore, the Court finds summary judgment in favor of Amdrill and Westfield.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Amdrill and Westfield's Motions for Summary Judgment (Record Documents 78 & 80) are **GRANTED**. TWE's Motion for Summary Judgment (Record Document 82) is **DENIED**. Therefore, Amdrill has not breached any contract with TWE, LEI, and Aries Marine nor is it contractually obligated to defend, indemnify, and hold harmless. TWE, LEI, and Aries Marine's claims against Amdrill and Westfield are **DISMISSED WITH PREJUDICE**.

An Order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 30th day of December, 2024.

_____

DISTRICT COURT JUDGE