**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

IN RE: M/V RAM XVII

CIVIL ACTION NO. 6:22-cv-0998

JUDGE S. MAURICE HICKS, JR.

MAGISTRATE JUDGE AYO

**MEMORANDUM RULING**

Before the Court is a <u>Daubert</u> Motion to Exclude Gregg Perkin's (Perkin) Testimony filed by Lloyd Engineering Inc. ("LEI"). <u>See</u> Record Document 79. A Notice of Deficiency was issued. <u>See</u> Record Document 83. LEI entered a corrective document for its <u>Daubert</u> Motion to Exclude Gregg Perkin's Testimony. <u>See</u> Record Document 85. Tolunay-Wong Engineers Inc. ("TWE") adopted and joined in LEI's <u>Daubert</u> Motion. <u>See</u> Record Documents 88 & 89. Dylan Rose ("Rose") filed an opposition. <u>See</u> Record Document 92. No reply was filed. For the reasons set forth below, LEI's Motion is **DENIED**.

**BACKGROUND**

The facts of this case have already been provided in two prior Memorandum Rulings. <u>See</u> Record Documents 110 & 112. Therefore, a shorter recitation of the pertinent facts to the instant motion is provided below.

Aries Marine Inc. ("Aries Marine") filed a limitation of liability action based on an underlying claim for damages filed by Rose in Louisiana state court. <u>See</u> Record Document 85 at 5. Rose answered the Aries Marine suit and filed crossclaims against

TWE, LEI, and Aries Marine. See id. LEI was contracted to take drilling core samples. See id. LEI contracted with TWE to obtain and handle the core drilling samples. See id. TWE, in turn, contracted with Amdrill Inc. ("Amdrill") to perform the drilling work. See id. Amdrill is Rose's employer. See id. Aries Marine owns the M/V Ram XVII, a lift boat which LEI chartered to perform the work. See id. Rose was injured during a drilling accident aboard the M/V Ram XVII. See id. Rose has designated Perkin to testify and provide a written expert report concerning "all issues of negligence, liability, dangerous acts, action below the standard of care in the industry…." See id. As a result, LEI filed this Daubert Motion, which TWE adopts and joins.

Perkin states the foundation of his report is "based upon a reasonable degree of scientific and engineering certainty and is supported…by the information, materials, and testimony reviewed and considered thus far." See Record Document 85-1 at 4. Perkin provides that "[t]he methodologies used to form [his report] were based upon an analytical approach to investigation incidents and equipment failures which are recognized and accepted in th engineering, scientific and safety communities." See id. In drafting his report, Perkin "relied upon information, evidence, data and/or written and/or printed materials which were either provided by the Client, in [Engineering Partners International, LLC ("EPI's")] possession and/or available from reliable and established outside sources." See id. Additionally, Perkin "utilized [his] education, training, knowledge, and experience to analyze the facts and data presented to [him] to establish an incident sequence…to determine certain casual factors pertaining to this matter." See id. Perkin provides six observations, opinions, and conclusions "based upon the materials, documents and testimony reviewed thus far, including [his] education, knowledge, training, and

experience as a registered Professional Engineer in the discipline of Mechanical Engineering." See id. at 26–27.

## LAW AND ANALYSIS

### I. Daubert Standard.

Federal Rule of Evidence 702 discusses testimony by expert witnesses. An expert witness is qualified by their "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Expert testimony is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Id. Rule 703 discusses the bases of an expert's opinion testimony:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in a particular filed would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

FED. R. EVID. 703.

The Fifth Circuit has further clarified that the "'distinction between lay and expert witness testimony is that lay testimony "results from a process of reasoning familiar in everyday life," while expert testimony "results from a process of reasoning which can be

mastered only be specialists in the field."'" U.S. v. Breland, 366 Fed. Appx. 548, 552 (5th Cir. 2010) (quoting FED. R. EVID. 701, advisory committee's note to 2000 amendments). Rule 702's standard arises from the seminal case of Daubert v. Merrell Dow Pharmaceuticals, Inc., in which the Supreme Court established the role of trial courts as gatekeepers for expert testimony, permitting such testimony only if it is both reliable and relevant. See 509 U.S. 579, 589, 113 S. Ct. 2786, 2795 (1993).

The Daubert holding provided an illustrative list of factors that courts may use when evaluating the reliability of expert testimony. See id. at 592–594. These factors include whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community. See id. at 593–594. "In short, expert testimony is admissible only if it is both relevant and reliable." Pipitone v. Biomatrix, Inc., 288 F. 3d 239, 244 (5th Cir. 2002). Thus, the Daubert factors should be applied with flexibility and the question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 138, 119 S. Ct. 1167, 1170 (1999); Burleson v. Tex. Dep't of Criminal Justice, 393 F. 3d 577, 584 (5th Cir. 2004).

Though the trial court must fulfill its role as gatekeeper in ensuring that all admitted expert testimony is both reliable and relevant, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." U.S. v. 14.38 Acres of Land, 80 F. 3d 1074, 1078 (5th Cir. 1996). Thus, "[t]he rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702, advisory committee's note (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction

4

on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 596. The proponent of an expert's testimony bears the burden of proving that it meets the requirements of Rule 702. <u>See</u> <u>Moore v. Ashland Chem., Inc.</u>, 151 F. 3d 269, 276 (5th Cir. 1998). Whether these elements are met is a preliminary question for the district court to decide under Federal Rule of Evidence 104(a).

## II. Analysis.

In its Motion, LEI argues Perkin authored a report in which he fails to establish any scientific methodology or utilize any industry standards, regulations, or reasons to support his conclusory opinions. <u>See</u> Record Document 85 at 5–6. LEI contends all of Perkin's conclusions are unsupported by any expert analysis of industry standards, and there is an enormous analytical gap between the facts and his conclusions. <u>See id.</u> at 10. Additionally, LEI points out that Perkin has been excluded by numerous courts all over the country for this same sort of "analysis" and should be excluded in this case as well. <u>See id.</u> at 6.

Rose opposes, asserting Perkin's expert opinions and anticipated testimony will assist the trier of fact in understanding industry safety standards in place for drilling, maritime safety practices on liftboats, and evaluating how the circumstances which led to Rose's injury were incompatible with those standards and practices. <u>See</u> Record Document 92 at 1–2. Furthermore, Rose argues Perkin's opinions are reliable, as they are based on his extensive knowledge, experience, and research, as well as his review of the documents and testimony presented in this matter. <u>See id.</u> at 2. Additionally, Rose contends that other courts' conclusions about Perkin have no relevance to this case. <u>See</u>

id. at 15. Rose asks the Court to deny LEI's Motion. See id. at 19. In the alternative, Rose requests that Defendants be prohibited from presenting testimony from their liability expert, Erik Oberlin. See id.

"[T]he admissibility of an expert opinion is taken on a case-by-case basis, considering the facts of each individual case, the proferred expert report and opinions, and the issue of whether that report will assist the trier of fact in its resolution of issues particular to that individual case." Richardson v. SEACOR Lifeboats, LLC, No. 14-1712, 2015 WL 2193907, at *2 (E.D. La. May 11, 2015). Even if other courts have given little weight to Perkin's testimony or excluded him as an expert, that does not mean his ostensible testimony here will not satisfy a Daubert analysis. See Otkins v. Gilboy, No. 21-1275, 2024 WL 3741375, at *4 (E.D. La. Mar. 18, 2024). Perkin's report and testimony will be analyzed under the facts of the instant case, not a previous case. See Arnold v. Canal Barge Co., Inc., No. 13-4966, 2014 WL 3587345, at *2 (E.D. La. July 21, 2014).

"Various aspects of maritime operations are complex, and expert testimony regarding the prevailing standards of vessel safety and the different job duties of vessel personnel [can] aid the [c]ourt." Matter of Savage Inland Marine, LLC, No. 19-536, 20-122, 20-167, 2021 WL 2935300, at *2 (E.D. Tex. Jan. 22, 2021). However, "several courts have precluded safety experts from testifying about safety procedures on vessels when a jury is capable of understanding the relevant safety policies and regulations." Howard v. Cal Dive Intern., Inc., No. 09-6265, 2011 WL 63873, at *3 (E.D. La. Jan. 6, 2011). For example, a district court has "excluded the plaintiff's expert from testifying after determining that the jury was capable of understanding the defendant employer's safety policies and whether those policies were violated when the plaintiff feel while offloading

pipe." Id. (citing Oatis v. Diamond Offshore Mgmt. Co., No. 09-3267, 2010 WL 936449, at *2 (E.D. La. Mar. 12, 2010)).

Unlike in Howard and Oatis, understanding the safety standards for drilling operations on a vessel is not "within the realm of the average juror's knowledge and experience." Dean v. Seacor Marine Payroll Mgmt., L.L.C., No. 21-1177, 2023 WL 9686716, at *3 (E.D. La. Nov. 7, 2023) (citing Peters v. Five Star Marine Servs., 898 F. 2d 448, 450 (5th Cir. 1990) (citing Smith v. U.S. Gas Pipeline Co., 857 F. 2d 1471 (5th Cir. 1988))). Therefore, the Court finds expert testimony is marginally but sufficiently appropriate in this case and may aid the trier of fact, as long as it complies with the Federal Rules of Evidence and Daubert. Defendants are free to voir dire Perkin before he renders any opinions.

As previously stated, the Court recognizes the importance of a case-by-case approach when analyzing the admissibility of an expert's opinion. There is, however, an analogous case involving Perkin that provides the Court some insight for its analysis. The Court is merely using the case for research and reference to perform an independent review of the facts and circumstances of the instant case. In Compton v. Moncla Cos., LLC, the plaintiff intended to offer Perkin "as an expert in marine safety to aid the jury in determining the cause of the accident." No. 17-2258, 2020 WL 1638287, at *1 (E.D. La. Apr. 2, 2020). Perkin provided five opinions, and the defendant challenged each of them under Daubert as being conclusory, unreliable, and unsupported. Id. at *3. The defendant supported its argument with the fact that Perkin had been excluded by other courts. Id.

The district court found that Perkin's "education and experience appear[ed] to qualify him to testify as an expert in drilling safety." Id. However, since Perkin had not

been deposed, that court could not make a conclusive determination about his qualifications until after hearing arguments at trial. Id. Additionally, the court could not "assess fully whether each of Perkin's opinions [were] relevant and reliable" since he had not been deposed. Id. Thus, the court gave the defendant the "opportunity to explore these issues at trial through cross-examination of Perkin and the presentation of countervailing testimony." Id. The court reasoned that "'questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" Id. (quoting Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F. 3d 546, 562 (5th Cir. 2004) (emphasis and citation omitted)). The court ultimately denied the motion to exclude Perkin. Id.

The instant case is analogous to Compton. Rose has suffered an injury aboard a vessel, intends to offer Perkin's expert testimony ostensibly as a maritime safety expert, and Perkin has not been deposed in this case. Perkin has reviewed several materials in arriving at his opinions, such has Amdrill's Occupational Safety and Health Manual, the video of the day of the incident, various text messages, and several depositions with exhibits. See Record Document 85-1 at 29–30. While Perkin does not specifically reference any industry guidelines or other standards, the absence of these references does not necessarily exclude his testimony at this stage. His opinions and conclusions appear to stem from his knowledge and experience, at least at this juncture.

Perkin is a mechanical engineer with more than 55 years "of domestic and international experience in energy-related and other industries." See Record Document 85-1 at 32. He claims to have more than 35 years of experience testifying as a professional engineer. See id. Additionally, he claims to be "[e]xperienced in various

mechanical fields relative to conducting product liability, personal injury, and accident reconstruction analysis." See id. After analyzing Perkin's curriculum vitae, he may succeed in being accepted as a maritime safety expert. However, since Perkin has not been deposed, the Court cannot make a conclusive ruling on his qualifications at this time. LEI and TWE may conduct voir dire and present arguments as to his qualifications at trial. The Court can then make a final determination. As to whether each of Perkin's opinions and conclusions comply with the requirements of Rule 702, the Court cannot make this determination at this time without the benefit of at least his deposition testimony. At trial, LEI and TWE will have the opportunity to raise these issues by cross-examining Perkin and presenting countervailing testimony. Questions as to the appropriate bases and sources of his opinions are better left for the jury's consideration because those questions relate more to the weight given to an expert's opinion rather than its admissibility. 2020 WL 1638287, at *3.

The Court reminds counsel of Rule 704, however, which "does not allow an expert witness to give legal conclusions or to simply tell the jury what result to reach." Kellar v. Union Pac. R.R. Co., No. 21-2045, 2024 WL 4643871, at *2 (E.D. La. Oct. 31, 2024) (emphasis omitted) (citing Owen v. Kerr-McGee Corp., 698 F. 2d 236, 239–40 (5th Cir. 1983) (citations omitted)). While "'testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact,'" only the judge can provide the jury with relevant legal standards. Id. (quoting FED. R. EVID. 704). See Lamar Advert. Co. v. Zurich Am. Ins. Co., 533 F. Supp. 3d 332, 341 (M.D. La. 2021). Therefore, Perkin's testimony may not opine about any legal conclusions or legal standards.

**CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that LEI's Daubert Motion, in which TWE adopts and joins, is hereby **DENIED**. Any issues relating to Perkin's report or testimony, such as his qualifications or methods, under the Federal Rules of Evidence and Daubert are deferred until trial during cross-examination.

An Order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 30th day of December, 2024.

_____
DISTRICT COURT JUDGE